**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

In re:

RAYMOND WARE,  Case No. 12-30566-KLP
JENNIFER WARE,  Chapter 7

        Debtors.

## MEMORANDUM OPINION

Before the Court is the Chapter 7 Trustee's motion to surcharge EVB, holder of a judgment lien against the Debtor, Raymond Ware, pursuant to 11 U.S.C. § 506(c).[1] An evidentiary hearing was conducted on the motion on January 22, 2014. The Trustee asserts that $102,142.50 of the attorney's fees and $1,034.08 of the expenses he incurred in the case were for the benefit of EVB and that those amounts should be deducted from the proceeds of EVB's collateral and retained by the Trustee.[2]

## JURISDICTION

The Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157(a) and (b)(2)(A), (C), (K), and (O), 28 U.S.C. § 1334, and the General Order of Reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. Venue in this district is proper under 28 U.S.C. § 1409.

---

[1] Allowing the bankruptcy estate to recover compensation or reimbursement of expenses from a secured creditor, either directly or indirectly, out of the proceeds of the secured creditor's collateral is commonly referred to as a "surcharge of collateral." See Hon. Joan N. Feeney, *Bankruptcy Law Manual* § 6:50 (5th ed. 2013).

[2] Along with the motion to surcharge, the Trustee filed an interim application for compensation for Sands Anderson PC, attorney for the Trustee, seeking compensation in the amount of $115,207.50 and reimbursement of expenses in the amount of $1,034.08. The attorney's fees and expenses were incurred primarily in connection with assisting the Trustee in selling real property and litigating related lien avoidance actions. No objections to the application were filed and neither the Office of the U.S. Trustee nor EVB, both of whom were present, offered an objection. At a hearing held concurrently with the hearing on the surcharge motion, the Court noted that the application for compensation would be approved.

**FINDINGS OF FACT**

On January 31, 2012, Raymond and Jennifer Ware filed a Chapter 7 bankruptcy petition in this Court. At that time, Raymond Ware (the "Debtor") was the owner of real property located at 337 Kellum Drive, Louisa County, Virginia, which he purchased in 2006. Soon after Ware's acquisition, EVB financed the development of the property but recorded a defective deed of trust and, consequently, did not obtain an interest in the property.[3]

In March of 2011, First Capital Bank ("FCB") obtained a judgment against the Debtor for $73,372.78. FCB recorded its judgment in Louisa County, Virginia, on May 4, 2011, thereby perfecting a security interest in the property.

On June 6, 2012, FCB[4] filed a proof of claim (Claim No. 4) in the amount of $87,056.80, with interest from the date of the bankruptcy filing at the rate of 18% per annum, describing its claim as fully secured due to its recorded judgment lien. On February 6, 2013, FCB filed a notice that its claim had been transferred to EVB.[5]

On November 28, 2011, prior to the filing of this case, Fidelity National Title Insurance Company ("Fidelity"), as subrogee of EVB, filed a suit in the Circuit Court of Louisa County, Virginia, against the Debtor and FCB, seeking reformation of its defective

---

[3] Ware intended to develop the Kellum Drive property through Alexis Homes, LLC, of which he was the sole member and manager. To finance the development construction and pay off an earlier deed of trust, Alexis Homes borrowed $269,500 from EVB, as evidenced by a note in the same amount executed on September 27, 2006, by Alexis Homes in favor of EVB. That same day, as security for the EVB loan, Alexis Homes executed a construction deed of trust on the property for the benefit of EVB. However, at the time Alexis Homes executed the construction deed of trust, Ware still held the title to the property in his individual capacity, and Alexis Homes was not the record owner of the property. Thus, the construction deed of trust was defective when it was recorded in Louisa County, Virginia, on September 28, 2006, and did not grant any interest in the property to EVB.

[4] FCB has been represented by two law firms in this case, with one firm filing its proof of claim and the other firm representing FCB in connection with the related adversary proceedings.

[5] The exact date of the transfer is unclear. While EVB's objection to the Trustee's surcharge motion suggests that the transfer was part of a settlement between EVB and FCB that was negotiated in November 2012, argument by counsel for EVB at the hearing on the surcharge motion suggested that the transfer occurred the first week of December 2012.

deed of trust, declaration of an equitable lien, and equitable subrogation. On the same day, Fidelity also filed a related *lis pendens* in the Louisa County Circuit Court. FCB retained counsel and contested the action. The Louisa County suit was stayed as a result of Debtor's bankruptcy filing and was removed by Fidelity to this Court on May 9, 2012.

On April 30, 2012, the Chapter 7 Trustee filed an adversary proceeding seeking a determination of the nature and extent of liens, claims, and interests in the property, naming EVB and FCB as defendants.[6] In that action, the Trustee sought to avoid any transfer of an interest in the property that might arise from EVB's prosecution of its reformation suit and the filing of the *lis pendens*, arguing that such a transfer would be avoidable pursuant to §§ 544 and 547 of the Bankruptcy Code. EVB vigorously defended the suit. FCB filed an answer stating that it held a properly perfected first priority secured interest in the property.

The Trustee's adversary proceeding and the removed Louisa County state court reformation action were consolidated for trial.[7] The Trustee filed a motion for summary judgment and, on March 20, 2013, the Court entered a Memorandum Opinion and separate Order granting the Trustee's motion, finding that EVB had no secured interest in the property, dismissing the reformation complaint, and authorizing the Trustee to retain an auctioneer and schedule a public auction of the property. The Court specifically found that pursuant to § 547 of the Bankruptcy Code, the Trustee could avoid the *lis pendens* as well as any transfer that may arise from the reformation lawsuit for which the *lis pendens* was filed. The ruling did not address the status of FCB's judgment lien.

---

[6] Other defendants were Fidelity, William E. Martin, Jr., trustee, C. Tony Hudson, trustee, the Debtors, and Alexis Homes.

[7] The consolidated action was Adv. Pro. No. 12-03091-KLP. The Trustee's adversary proceeding was originally Adv. Pro. No. 12-03091-KLP, and the removed state court reformation action was originally Adv. Pro. No. 12-03098-KLP.

A public auction of the property was held by the Trustee on June 20, 2013, resulting in a high bid of $115,500.00, after which the Trustee filed a motion seeking confirmation of the contract obtained as a result of the auction.[8] On July 22, 2013, the Court entered an order approving the sale to the high bidder and authorizing payment of the auctioneer's commission. The sale did not take place because the high bidder was unable to consummate the transaction.

After the failed auction, the Trustee placed the property on the market and received an offer of $137,600.00 from a private purchaser. On September 5, 2013, the Trustee filed a motion seeking court approval of the private sale of the property. After conducting an inspection of the property, the purchaser requested that the contract be cancelled, and on September 10, 2013, the Trustee executed a release of the private contract.[9]

On October 11, 2013, the Trustee filed an amended sale motion seeking authority to sell the property to different private buyers for a gross price of $142,600.00, less allowances, adjustments, and expenses which, according to the motion, would result in net proceeds of approximately $122,204.98. In a footnote to the motion, the Trustee noted that he "reserve[d] all rights to seek surcharges against sale proceeds pursuant to 11 U.S.C. § 506(c)." (Docket No. 96). EVB filed a limited objection to the Trustee's amended sale motion "to contest the motion to the extent it expressly or by implication contemplates that any administrative costs relating to the sale of the Property are recoverable against EVB."

---

[8] The motion included a request for authorization to pay the Trustee's auctioneer regardless of whether the judgment lien that FCB had transferred to EVB would be paid in full because the commission "meets the criteria to surcharge." No objection was filed to this motion. After the high bidder failed to complete the sale, the deposit on the purchase price was forfeited by the bidder and divided equally between the auctioneer, who returned his share to the bidder, and the Trustee, who retained his share for the benefit of the bankruptcy estate.

[9] On September 19, 2013, EVB filed a Limited Objection to the Trustee's motion seeking authority to sell to the private purchaser, citing a lack of information concerning the expenses associated with the sale. EVB claimed a need for this information to allow it to evaluate whether it would receive any funds above the amount of its judgment lien.

4

(Docket No. 99). EVB asserted that "[t]he administrative expenses to be incurred are not reasonable, necessary, or beneficial to EVB." *Id*.

On November 13, 2013, the Court entered an order approving the amended sale motion and directing the Trustee to pay the auctioneer's commission and closing expenses from the sale proceeds. The order provided that the property was to be sold free and clear of liens, claims, encumbrances, and interests, with such liens, encumbrances, and interests to attach to net sale proceeds and subject to further order of this Court. On November 26, 2013, the Trustee filed a report of sale documenting gross proceeds obtained from the sale in the amount of $142,600.00, expenses of sale totaling $22,185.36 and net proceeds to the estate of $120,414.64. (Docket No. 104).

The Trustee's decision to administer the real property was based on his determination that equity existed for the benefit of the unsecured creditors of the estate. He retained counsel in order to assist him in clearing the title to the property, which he anticipated would be relatively straightforward.

At the hearing on January 22, 2014, the Trustee testified that at no time did he intend to challenge FCB (now, EVB)'s lien on the property, having determined that there was no basis for doing so, nor did he ever take a position adverse to FCB.[10] The Trustee is holding approximately $121,844 in the bankruptcy estate.[11] There are no other assets

---

[10] On November 21, 2012, the Trustee filed an objection to FCB's proof of claim (Claim No. 4) on the grounds that it is secured by property not administered by the Trustee. FCB filed a response requesting that a hearing be held on the Trustee's objection and seeking an order overruling the objection, arguing that the outcome of the adversary proceeding filed by the Trustee might in fact result in the property being administered by the Trustee. There has been no disposition or withdrawal of the objection, which is apparently an oversight given the Trustee's testimony. In his objection to FCB's claim, the Trustee did not contest the validity of the judgment lien. In any event, the actions of the Trustee in connection with FCB's proof of claim do not support a finding that the Trustee has acted for the benefit of FCB.

[11] A portion of the funds in the bankruptcy estate were obtained from the forfeiture of the high bidder's deposit at the June 20, 2013, auction, when that bidder was unable to complete the sale.

available for administration. The amount of EVB's judgment lien currently is in excess of $110,000.00.[12] There are no other liens on the proceeds of the sale of the property.

## CONCLUSIONS OF LAW

Section 704(a)(1) of the Bankruptcy Code requires a chapter 7 trustee to "collect and reduce to money the property of the estate for which such trustee serves . . . ." In each case in which he or she is appointed, the trustee must evaluate whether there are sufficient assets in the bankruptcy estate to give purpose to performing this statutory duty.

A chapter 7 case is known as a "no asset case" if all property of the estate is either exempt or should be abandoned. *See* 11 U.S.C. § 554; Fed. R. Bankr. P. 6007. In a no asset case, the trustee does not administer property pursuant to § 704(a)(1).

A chapter 7 case is known as an "asset case" if sufficient estate assets are available to allow the trustee to pay the cost of administration and to distribute a meaningful dividend to unsecured creditors. In an asset case, the trustee is required to fulfill the fundamental duty of liquidating property for the benefit of unsecured creditors.

Determining whether a chapter 7 case is an asset case and deciding whether to administer property can be difficult. The trustee must ascertain the value of each asset and assess the validity and perfection of any potential liens and exemptions.[13] The trustee must also consider the costs associated with administering property. If administering an asset will result in expenses that consume the property's equity, then liquidating the property is likely to be of no benefit to unsecured creditors and the property should be abandoned.

---

[12] The judgment is in the amount of $73,372.78 with interest accruing at 18% per annum from January 24, 2011, until paid.

[13] The trustee may be able to utilize his or her avoidance powers to realize equity in an asset and allow an asset sale or otherwise recover funds for the bankruptcy estate.

6

The trustee must exercise reasonable business judgment throughout this process. *See In re US Airways Grp., Inc.*, 287 B.R. 643, 645 (Bankr. E.D. Va. 2002).

As a general rule, trustees pay administrative expenses[14] from the unencumbered assets of a bankruptcy estate. *Ford Motor Credit Co. v. Reynolds & Reynolds Co.* (*In re JKJ Chevrolet, Inc.*), 26 F.3d 481, 483 (4th Cir. 1994); *see also New Orleans Pub. Serv., Inc. v. First Fed. Sav. & Loan Assoc. (In re Delta Towers, Ltd.),* 924 F.2d 74, 76 (5th Cir. 1991). Section 506(c)[15] provides an exception to this general rule, allowing a trustee to recover administrative expenses from the collateral of a secured creditor to the extent the secured creditor benefits from the expenses. *Id.* The Fourth Circuit has applied this exception narrowly, having stated that § 506(c) "should not be read to 'provide a means of wealth transfer from secured to unsecured creditors.'" *Loudon Leasing Dev. Co. v. Ford Motor Credit Co. (In re K&L Lakeland, Inc.)*, 128 F.3d 203, 210 (4th Cir. 1997) (citation omitted).

---

[14] Administrative expenses include "the actual, necessary costs and expenses of preserving the estate;" certain taxes, fines and penalties; and compensation and reimbursement for a limited range of services. 11 U.S.C. § 503(b).

[15] 11 U.S.C. § 506(c) states "[t]he trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim . . . ."

7

Unless the secured creditor either expressly[16] or impliedly[17] consents to the incurring of expenses, which did not occur in this case, a trustee must satisfy three conditions to recover administrative expenses from a secured creditor's collateral. The expenses must be: "(1) necessary to preserve or dispose of the property; (2) of benefit to the secured creditor; and (3) reasonable." *In re Bob Grissett Golf Shoppes, Inc.,* 50 B.R. 598, 602 (Bankr. E.D. Va. 1985). The trustee bears the burden of proving the necessity, reasonableness, and benefit of the expenses. *Gen. Elec. Credit Corp. v. Levin & Weintraub (In re Flagstaff Foodservice Corp.),* 739 F.2d 73, 77 (2d Cir. 1984); *In re Debbie Reynolds Hotel & Casino, Inc.,* 255 F.3d 1061, 1068 (9th Cir. 2001) (a party seeking a surcharge faces an "onerous" burden of proof of establishing entitlement to payment); *In re D & M Land Co.*, No. 07-00054, 2010 WL 358525, at *7 (Bankr. E.D.N.C. Jan. 15, 2010). The Court must make affirmative findings concerning these requirements before granting a trustee's surcharge motion. *In re Bob Grissett Golf Shoppes, Inc.,* 50 B.R. at 602; s*ee also Matter of Trim-X, Inc.,* 695 F.2d 296, 299-302 (7th Cir. 1982).

Here, the Trustee is seeking to recover attorney's fees of $102,142.50 and associated expenses of $1,034.08 directly from the proceeds of the sale of the property at

---

[16] The record does not reflect that the Trustee obtained the consent of, or even communicated with, FCB in connection with his intention to challenge EVB's alleged secured claim. The Trustee included FCB as a defendant in his complaint to determine the extent and validity of liens (Adversary Proceeding No. 12-03091-KLP) and filed an objection to the FCB proof of claim (Claim No. 4), both of which resulted in FCB's securing its own counsel to protect its interest. EVB, as successor in interest to FCB, not only failed to consent to the Trustee's administering the property, it specifically objected to the payment of administrative expenses from the sales proceeds. (Docket No. 99).

[17] Consent may be implied when a creditor puts in motion the action for which the expense is incurred, such as where the creditor seeks the appointment of a chapter 7 trustee to liquidate the estate. *See General Elec. Credit Corp. v. Peltz (In re Flagstaff Foodservice Corp.)*, 762 F.2d 10, 12 (2d Cir. 1985) (indicating that implied consent is limited generally to instances in which the secured creditor has caused the additional expense). While FCB did not object to the expense of the auctioneer for the sale held on June 20, 2013, its failure to do so does not imply that it consented to recovery of the expenses relating to the Trustee's effort to generate equity in the property by challenging EVB's alleged lien or to any other expense. *See In re Sports Info. Data Base, Inc.*, 64 B.R. 824, 827 (Bankr. S.D.N.Y. 1986) (acquiescence to auction of collateral did not constitute consent).

337 Kellum Drive, which he contends were incurred primarily for the benefit of EVB, as successor in interest to FCB.[18]  There are no other costs and expenses associated with the preservation or disposition of the property that the Trustee has included in his request; therefore, the Court need only consider whether the Trustee's attorney's fees and expenses are recoverable from the sales proceeds.[19]

The Trustee's decision to administer the property was motivated by his belief that EVB's deed of trust/*lis pendens* claim would be deemed unsecured and that the value of the property exceeded the amount of FCB's judgment lien by an amount sufficient to enable him to sell the property, pay the costs of administration, pay FCB in full, and have sufficient net proceeds available to make a meaningful distribution to unsecured creditors. By retaining counsel to file the adversary proceeding to determine the validity, priority, and extent of liens, the Trustee was incurring costs and expenses in an effort to avoid a lien other than FCB's judgment lien and thereby generate equity in the property.  His intention was not to benefit FCB but rather to fulfill his statutory duty to benefit the unsecured creditors of the bankruptcy estate.

---

[18] EVB did not document with the Court its acquisition of FCB's claim until February 6, 2013, well after the commencement of litigation challenging the validity of EVB's asserted lien under its deed of trust and *lis pendens*.  The EVB deed of trust/*lis pendens* claim and FCB's claim are two separate claims and are treated accordingly. The acquisition of FCB's claim by EVB does not automatically subject that claim to the Trustee's administrative reimbursement claim to any greater extent than had it been retained by FCB.

[19] The Trustee's motion does not itemize nor otherwise seek reimbursement of specific fees and costs included in the attorney's fees and expense recovery request but, rather, seeks an award of the full amount as "necessary to related (sic) to quieting title and disposing of (sic) commonly known as 337 Kellum Drive . . . ." (Docket No. 106, page 15).  Consequently, the Court is unable to consider allowing reimbursement for specific tasks or expenses associated with the disposition of the property.  *Cf. In re Truitt*, 15 B.R. 169 (Bankr. N.D. Ga. 1981).  Moreover, courts have generally refused to charge the costs of preserving and disposing of collateral to the secured creditor if disposition of the property generates a sufficient amount to pay both the expenses and the secured claim in full.  *See, e.g., Toledo Trust Co. v. Roberts (In re Nicholson Indus., Inc.),* 73 B.R. 266, 270 (Bankr. N.D. Ohio 1987).  The Trustee apparently obtained net proceeds in excess of the amount of the judgment lien which would be available, and likely sufficient, to pay the attorney's fees which are directly related to the transfer of the property.

9

FCB had retained its own counsel and was defending the reformation suit filed by EVB in state court. The Trustee offered no evidence of the extent to which FCB would have incurred fees and expenses in defending or resolving that action or in pursuing enforcement of its lien had the Trustee abandoned the property.[20] "Necessary" costs are those that are unavoidably incurred by a trustee in the preservation or disposal of the secured property. *In re Combined Crofts Corp.*, 54 B.R. 294, 297 (Bankr. W.D. Wis. 1985). The Trustee has failed to demonstrate that the claimed expenses were unavoidable and thus "necessary" within the meaning of § 506(c).[21]

Given the purpose of § 506(c), even in the absence of consent by the holder of a secured claim, the facts of a particular case may justify charging a secured creditor with certain expenses if a clear benefit to the creditor can be shown. *See, e.g., United States v. Boatmen's First National Bank*, 5 F.3d 1157 (8th Cir. 1993)) (*overruled on other grounds by Hartford Underwriters Ins. Co. v. Magna Bank, N.A. (In re Hen House Interstate, Inc.)*, 177 F.3d 719 (8th Cir. 1999). In the present case, the Trustee incurred administrative costs grossly disproportionate to the amount of sales proceeds. Were he to be awarded the surcharge he is seeking, any distribution that EVB might receive as the current holder of the judgment lien would be so inconsequential as to render EVB essentially unsecured.[22]

---

[20] See Va. Code §§ 8.01-458 to 8.01-465 for state law remedies available to a judgment lien creditor.

[21] "Where actions are elective and forgo other viable actions and options, such actions are not, ipso facto, by nature necessary." *In re TIC Memphis RI 13, LLC*, 498 B.R. 831, 836-37 (Bankr. W.D. Tenn. 2013). While the Trustee may have been acting reasonably in his initial determination that he should administer the property, such "reasonableness in and of itself does not infer necessity . . . ." *Id*. at 837. The Trustee has not demonstrated that his actions were substantially similar to those that FCB would have taken in his absence. In fact, it is reasonable to assume that FCB would have proceeded in another fashion, perhaps similar to the course it took in transferring its claim, rather than incur the substantial fees and expenses generated by the Trustee's actions.

[22] Section 506(b) provides that "[t]o the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which the claim arose." Under this provision, EVB may be entitled to add to its claim the various costs and fees incurred in addition to principal and accrued interest, resulting in a significantly higher claim amount. Were the sales proceeds

Furthermore, given the apparent administrative insolvency of the bankruptcy estate even with an allowance of the surcharge request, there would likely be no distribution to unsecured creditors. Awarding the Trustee the expenses he seeks would almost entirely consume EVB's distribution. It is difficult to understand how such a result would benefit EVB. The Court concludes that the Trustee has not demonstrated a "clear benefit" to EVB under the facts of this case.

Whether the expense items sought to be recovered from a secured creditor's collateral are "reasonable" is often considered by comparing them to the amount of the costs and expenses that would necessarily have been otherwise incurred by the creditor. *See, e.g., Compton Impressions, Ltd. v. Queen City Bank, N.A. (In re Compton Impressions, Ltd*.), 217 F.3d 1256, 1260 (9th Cir. 2000) ("We measure the necessity and reasonableness of the Debtor's incurred expenses against the benefits obtained for the secured creditor and the amount that the secured creditor would have necessarily incurred through foreclosure and disposal of the property."). The Trustee asserts that the approximate $103,000 he is seeking to recover from net sales proceeds of approximately $120,000 is reasonable. He contends that FCB would have incurred those same expenses had it acted independently. The record contradicts the Trustee's contention. In contrast to the other litigants, FCB and its counsel exercised restraint in representing its interests.[23]

---

sufficient to pay both the expenses of preserving and disposing of the collateral and the secured creditor's claim in full, the proceeds would first pay relevant expenses and the secured creditor's claim in full before proceeds would be available to pay other estate claims. *See In re West Post Road Props. Corp*., 44 B.R. 244, 247 (Bankr. S.D.N.Y. 1984). At any point where the expenses associated with preserving and disposing of collateral appear likely to dissipate the equity in estate property, it should be readily apparent that there is no benefit remaining for unsecured creditors.

[23] The extent to which EVB and the Trustee engaged in prolonged and contentious litigation over the validity of the deed of trust and related *lis pendens* leads the Court to question the business judgment of both parties. The Trustee complains of EVB's "delays and uncooperativeness" (Docket No. 106, page 13) while EVB decries the Trustee's "frivolous filings and personal attacks, and over aggressiveness in pursuing a property of little value . . . ." (Docket No. 111, page 8). It is difficult for the Court to see how either the bankruptcy estate or EVB, which presumably incurred comparable attorney's fees and expenses, benefitted from this "scorched earth" approach.

When presented with the opportunity, FCB transferred its claim.  While the record does not reflect the consideration it received, there is no evidence suggesting that FCB would have become less pragmatic had the Trustee abandoned the property and certainly no evidence that it would have expended over $100,000 in attorney's fees protecting its interest.  The Court has already concluded that the Trustee has failed to carry his burden of demonstrating that the secured creditor would have necessarily incurred the same expenses he now seeks to recover.  It follows that the requested costs and expenses are not reasonable.

The Trustee has failed to carry his burden of proving that he satisfies the three conditions required in order to recover his attorney's fees and expenses from the proceeds of the property securing EVB's judgment lien.  He has not demonstrated that the expenses were necessary, beneficial to EVB, and reasonable.  The Court must therefore deny the Trustee's motion.

On occasion, a dutiful trustee may embark on a course of action that, if successful, will reap substantial benefits for unsecured creditors.  Unfortunately, good intentions are not always rewarded and reasonable risk taking is not always successful.  In cases where the trustee takes a chance regarding disposition of property that does not pay off, he cannot avoid the consequences of losing the gamble.  *See In re TIC Memphis RI 13, LLC,* 498 B.R. 831, 836-38 (Bankr. W.D. Tenn. 2013);[24] *Moister v. Farmers Bank (In re Truitt),* 15 B.R. 169, 171 (Bankr. N.D. Ga. 1981).  A chapter 7 trustee must continue to exercise good business judgment throughout his or her administration of a bankruptcy estate.  The trustee

---

[24] *In re TIC Memphis IR 13* was a chapter 11 case in which the debtor exercised the powers of a trustee, pursuant to § 1107 of the Bankruptcy Code, 11 U.S.C. § 1107.

should monitor the progress of any litigation involving the estate and recognize when the cost-benefit analysis requires a change of course.

In this case, despite being motivated by his desire to fulfill his statutory duties, the Trustee knew, or should have known, that the mounting expenses of administration had eradicated any likely recovery for the unsecured creditors. His decision to continue to press on with litigation that held no net benefit for the bankruptcy estate was his alone. He cannot now make up for the estate's cash shortfall by surcharging a secured creditor whose lien was not in jeopardy.

The Chapter 7 Trustee's motion to surcharge is denied. A separate order shall be entered.

Signed: June 3, 2014

                                         /s/ Keith L. Phillips
                                   United States Bankruptcy Judge

Copies to:

Entered on Docket: June 3 2014

Elizabeth L. Gunn
Sands Anderson PC
P.O. Box 1998
Richmond, VA 23218-1998

John C. Smith
Sands Anderson PC
P.O. Box 1998
Richmond, VA 23218-1998

Roy M. Terry, Jr., Trustee
Sands Anderson PC
P.O. Box 2188
Richmond, VA 23218-2188

Joseph R. Pope
Williams Mullen
P.O. Box 1320
Richmond, VA 23219

Jennifer Ware
Raymond Ware
4428 Sheppards Road
Partlow, VA 22534

Walter L. Ragland
P. O. Box 675
Thornburg, VA 22565